Filed 2/5/21  In re R.C. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re R.C. et al., Persons Coming Under the Juvenile Court Law. | B303047 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.T.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 19CCJP05685A, 19CCJP05685B, 19CCJP05685C |

APPEAL from orders of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge.  Affirmed.

Melissa A. Chaitin, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

Mother appeals orders declaring her three children dependents of the juvenile court and removing the children from her physical custody. She also challenges an order imposing a monitored visitation restriction. The evidence showed mother was a current abuser of methamphetamine, she used the drug with her youngest child's father (who was barred from contact with mother under a domestic violence restraining order), and the children had suffered emotional trauma from the tumultuous home environment. Although mother had recent success addressing her addiction in an inpatient drug treatment program, she had also repeatedly lied about the extent of her drug use, and she had instructed her children to lie about her contact with the youngest child's father. The juvenile court found mother's lack of credibility, her years of drug abuse, and her tenuous recovery necessitated the removal order and monitored visitation restriction. The evidence supported the court's findings. We affirm.

**FACTS AND PROCEDURAL HISTORY**

Consistent with our standard of review, we state the facts established by the evidence in the light most favorable to the juvenile court's findings, resolving all evidentiary conflicts in favor of the findings, and indulging all reasonable inferences to uphold the court's orders. (*In re I.J.* (2013) 56 Cal.4th 766, 773; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.)

The family consists of mother and the children: R.C. (born October 2005), A.S. (born October 2009), and A.C. (born November 2015). Each child has a different father.

Mother and R.C.'s father coparented R.C., but did not have a formal custody agreement. A.S.'s father shared joint custody of

2

A.S. with mother. A.C.'s father had been living with the family. He did not have a custody agreement with mother.

In July 2019, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging general neglect of the children by mother and A.C.'s father, as well as possible drug use in the home.[1] Mother claimed she had not smoked marijuana since last year and denied current drug use. She said A.C.'s father smoked marijuana, but denied he used other drugs. She also said he no longer lived in the family home. Mother agreed to drug test.

In August 2019, the Department received another referral alleging domestic violence and drug use in the family home. The caller alleged mother verbally berated R.C. while under the influence of methamphetamine and mother had repeatedly complained that the child was " 'always depressed.' " R.C. had reportedly been "self-mutilating" by cutting her forearm, but when mother was confronted about seeking counseling for the girl, mother responded that cutting " 'doesn't count.' " Since the earlier referral, the caller said mother had been in the process of hiding or disposing of drug paraphernalia in the home.

A social worker went to the family home to investigate. She found A.C.'s father there with the three children and the maternal great grandmother. A.C.'s father explained there was an active restraining order prohibiting him from being within 100 yards of mother due to a domestic violence incident

---

[1] Mother's child welfare history included six referrals between May 2015 and December 2018 for alleged general neglect, sexual abuse by mother's boyfriend, and emotional abuse. All allegations were deemed inconclusive after investigation.

3

in May 2019.  He lived with his father and came to the house once or twice a week to spend time with his son when mother worked.  He denied there had been a new incident of domestic violence.

R.C. and A.S. said A.C.'s father no longer lived in the home. They had heard mother and A.C.'s father argue, but never witnessed a physical altercation.  R.C. and the maternal great grandmother had not seen drug use in the home.  The social worker reported there appeared to be no child safety concerns and there were no signs of drug paraphernalia.

Mother's drug test was positive for methamphetamine and amphetamine.  She admitted she had smoked the drug with a friend the day of the test.  She said she began using methamphetamine four months ago and used it " 'every once in a while' " since then.

Mother later admitted she began using methamphetamine more than a year earlier, in July 2018.  However, A.S.'s father reported mother had disclosed her methamphetamine use to him as far back as 2008.  Mother currently used the drug at her neighbor's home.  She denied A.C.'s father used methamphetamine, and she denied ever using the drug with him. She said A.C.'s father smoked "a lot of weed."

The day before his scheduled drug test, A.C.'s father admitted he also used methamphetamine.  His drug test was positive for methamphetamine, amphetamine, and marijuana.

The Department spoke with a friend of A.C.'s father who was familiar with the family.  She reported A.C.'s father continued to live in the family home, in violation of the restraining order, and he regularly used methamphetamine with mother.  She said mother and A.C.'s father were violent

4

with one another.  She believed R.C. was suffering from depression due to the turbulent home environment.

Mother agreed to a safety plan that required A.C's father to stay away from the home and that prohibited both parents from using drugs.  But not long after executing the safety plan, mother notified the Department that A.C.'s father had nowhere else to live and that she was "trying to work things out" with him.

On September 3, 2019, the Department filed a dependency petition on behalf of the three children, alleging mother and A.C.'s father had a history of domestic violence and they were current abusers of methamphetamine and marijuana.  The Department obtained a removal warrant and placed R.C. and A.S. with their respective fathers.  A.C. went to a foster placement.

After the detention, the Department interviewed A.S. again.  A.S. said mother had told the children to lie about A.C.'s father, and she confirmed A.C.'s father continued to live in the family home with the maternal grandmother's permission. A.S. also said R.C. had been cutting herself with a blade because R.C. felt "pressure."  She said R.C. wanted to run away from home.  A.S. had also thought about harming herself because of the chaotic home environment, but she said she now wanted to be strong for her father.

A.S. had witnessed mother smoking marijuana in the home's bathroom.  She said her grandmother also smoked "weed" and did not care about drug use in the house.

A.S. said A.C.'s father regularly yelled at mother, they were always arguing, and they sometimes would "hand fight."  She recalled the police had come to the home because of the fighting. Although mother and A.C.'s father had been told they could not

be around each other, "they never listened." A.S. said she was happier living with her father because she no longer had to "deal with all of that stuff."

R.C. likewise reported mother and A.C.'s father "argue all the time." She recalled an incident when A.C.'s father shoved mother, who hit her head on a door. The arguments usually began with a lot of yelling and profanity and often progressed into the parents shoving each other. Despite the restraining order, R.C. said A.C.'s father regularly came to the house when mother was at work and, on at least one occasion, had come over when mother was home to help her with A.C.

R.C.'s father had spoken with R.C. about her time at mother's home. R.C. told him mother and A.C.'s father fought "daily." Mother sometimes did not return home, and A.C.'s father stayed with the children. At other times, A.C.'s father slept in a car on the side of the house. R.C. said there were "always people hanging around" the house. A.C.'s father smoked marijuana in the home. R.C. had missed a lot school and her grades had been very poor the past year.

Contradicting her prior claims, mother admitted she was aware that A.C.'s father used methamphetamine at her neighbor's house while mother was at work. She said the neighbor had introduced her and A.C.'s father to the drug, and she admitted she and A.C.'s father used methamphetamine together. She claimed this occurred only "a few times."

At the end of August 2019, mother enrolled in an outpatient drug treatment counseling program. In September, she enrolled in an inpatient program. She tested negative for all substances four times between August and October 2019. In November 2019, she enrolled in a parenting class. Her

frequent visits with the children at the inpatient facility went well.

The Department had referred R.C. for mental health services and reported she was "getting better." R.C. no longer had thoughts of harming herself and her grades had considerably improved. A.S. also was doing well in her father's home. And A.C. was doing well in his placement.

On November 27, 2019, the juvenile court held a combined jurisdiction and disposition hearing. Its tentative decision was to dismiss the domestic violence counts and to sustain the substance abuse and failure to protect counts. The court reasoned the May 2019 domestic violence incident was too remote to support jurisdiction without more specific evidence of an ongoing threat of harm. As for the drug abuse and failure to protect counts, the court reasoned mother's and A.C.'s father's positive drug tests, their subsequent admissions that they used methamphetamine together, and their earlier attempts to deceive the Department about the extent of their drug use supported jurisdiction.

The Department and the children's counsel argued the court should sustain the domestic violence counts and submitted with respect to the substance abuse and failure to protect counts. Mother argued her recent participation in a residential drug treatment program negated any risk of harm from her past drug abuse.

The court adopted its tentative decision, dismissing the domestic violence counts and sustaining the substance abuse and failure to protect counts.[2] The court emphasized that mother's

_____

[2] In sustaining the counts, the court also found the children's respective fathers failed to protect them from the risk of harm posed by mother's and A.C.'s father's substance abuse.

7

and A.C.'s father's dishonesty about their substance abuse supported the finding that a current risk of harm persisted.

Regarding disposition, the Department recommended the court terminate jurisdiction over the older children with an exit order granting their respective fathers sole physical custody and joint legal custody with mother. As for A.C., the Department asked the court to remove the four-year-old from mother's and his father's custody and to maintain A.C. in a suitable placement with reunification services. The children's counsel joined with the recommendation, except with respect to R.C., who wanted the case to remain open to give mother a chance to reunify. While the children's counsel acknowledged mother was making progress in drug treatment, counsel argued a risk of harm remained because mother would be returning to the home where she used drugs and where she maintained a relationship with A.C.'s father. Mother requested the court maintain jurisdiction and release the children to her physical custody, citing her progress in treatment and her clean drug tests.

The juvenile court adopted its prior credibility findings, ordered the children removed from mother's physical custody, terminated jurisdiction over the older children with an exit order granting their respective fathers' sole physical custody and joint legal custody with mother, and ordered A.C. to remain suitably placed. The court ordered mother's visits to be monitored.

## DISCUSSION

1. ***Substantial Evidence Supports the Disposition Order Removing the Children from Mother's Physical Custody***

Mother challenges the jurisdictional findings regarding her substance abuse and failure to protect the children, as well as

8

the disposition order removing the children from her physical custody. However, she acknowledges reversal of the jurisdictional findings will have no effect on her children's adjudication as dependents, which was separately based on sustained allegations concerning the conduct of the children's fathers. Because jurisdiction will not be affected by our decision, and the jurisdictional findings will have no impact on mother's future rights or the challenged disposition order, we decline to address mother's challenge to the findings. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491; cf. *In re Drake M.* (2012) 211 Cal.App.4th 754, 762.) In any event, the same evidence that supports the disposition order also supports the jurisdictional findings. We address the disposition order now.

The purpose of the juvenile dependency laws "is to provide maximum safety and protection for children who are currently . . . being neglected, . . . and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (Welf. & Inst. Code, § 300.2;[3] see *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215 (*Christopher R.*).)

When a minor has been adjudged a dependent child of the court under section 300, the juvenile court may limit the control to be exercised over the dependent child by the parent or guardian. (§ 361, subd. (a).) A dependent child may not be taken from the physical custody of the parent with whom the child resides unless the juvenile court finds by clear and convincing evidence that there is a "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no

---

[3] Statutory references are to the Welfare and Institutions Code.

reasonable means by which the minor's physical health can be protected" without removal. (§ 361, subd. (c)(1); see *In re Ashly F.* (2014) 225 Cal.App.4th 803, 809–810 (*Ashly F.*).) " 'The court may consider a parent's past conduct as well as present circumstances.' " (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126 (*John M.*).) " 'A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent.' " (*In re Francisco D.* (2014) 230 Cal.App.4th 73, 83.)

Our Supreme Court recently clarified the standard for appellate courts to use when reviewing findings that must be proved by clear and convincing evidence. In such cases, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B., supra,* 9 Cal.5th at pp. 995–996; see also *In re Jasmon O.* (1994) 8 Cal.4th 398, 423.) The appellant has the burden of showing there is insufficient evidence to support the juvenile court's findings or orders. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Mother contends the evidence was insufficient to support the disposition order removing the children from her physical custody. She argues there was no evidence that her substance abuse ever resulted in physical harm to the children, and she

10

maintains her successful efforts in an inpatient drug treatment program eliminated any risk of future harm. She also argues the juvenile court failed to consider reasonable alternatives to removal. We conclude the evidence was sufficient to support the court's disposition order.

Fortunately, none of the children appear to have suffered direct physical harm from mother's substance abuse. But evidence of physical harm is not required before removal is appropriate, because the focus of section 361 is on *averting* harm to the child. (*John M., supra,* 212 Cal.App.4th at p. 1126.) This statutory directive is especially relevant for A.C., who, because of his tender years, is acutely at risk of harm from mother's inability to provide regular care while under the influence of methamphetamine. (See *Christopher R., supra,* 225 Cal.App.4th at p. 1220 [even absent evidence of actual harm, father's substance abuse supported removal of infant, who, because of his need for constant care, was at inherent risk of physical harm].) The evidence showed mother and A.C.'s father used methamphetamine together at a neighbor's home when they were responsible for supervising their four-year-old son. And mother allowed A.C.'s father to use methamphetamine when he cared for the child. This conduct endangered A.C. (See *ibid.*; cf. *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1004 (*Destiny S.*) [mother's drug use did not endanger 11-year-old child who " 'was old enough to avoid the kinds of physical dangers which make infancy an inherently hazardous period of life' "].)

As for the older children, while there may not have been physical harm, the evidence showed mother's substance abuse and tumultuous relationship with A.C.'s father had taken an emotional toll on R.C. and A.S. (See § 361, subd. (c)(1) [removal

11

is warranted when parental conduct poses a "substantial danger to the . . . emotional well-being of the minor"].) A friend of A.C.'s father, who was familiar with the family, reported the parents regularly used methamphetamine together and the home environment they fostered had caused R.C. to suffer depression. A.S. corroborated this report. After revealing that mother had told the children to lie about A.C.'s father staying with the family, A.S. disclosed that R.C. had been cutting herself with a blade and that R.C. wanted to run away from home. Mother had neglected R.C.'s mental health needs, suggesting the child's cutting " 'doesn't count' " as self-mutilation. After R.C. was removed to her father's home, her condition improved and she reported she was "getting better." A.S. had also thought about harming herself. She reported she was happier since being placed with her father, because she no longer had to "deal with" the problems in mother's home. This evidence of emotional harm to the older children was sufficient to support the removal order. (See *In re Joseph B.* (1996) 42 Cal.App.4th 890, 894–896, 898–899, 903 [although jurisdiction was based on physical abuse, risk of emotional harm supported continued removal of child from parents' physical custody; minor was emotionally traumatized by physical discipline, had adjusted to living with grandmother, and would likely run away from home if returned to parents' custody]; cf. *Destiny S., supra,* 210 Cal.App.4th at pp. 1001–1002 [no risk of harm where "uncontradicted evidence" showed child "was a healthy, happy preteen"].)

Mother's progress in an inpatient drug treatment program, while commendable, did not eliminate the risk of harm. Mother had a substantial history of methamphetamine abuse, and the juvenile court reasonably found her lack of candor about the

12

significance of her drug use raised considerable doubt about the durability of her recovery. Mother repeatedly lied about her drug abuse—first claiming she never used methamphetamine, later indicating she had only been using the drug for a few months and never with A.C.'s father, and finally admitting she had actually been using methamphetamine for over a year and she used it with A.C.'s father "a few times." Still the evidence showed mother's admissions were deceptive. A.S.'s father reported mother had in fact been using methamphetamine for over a decade, and a family friend said mother and A.C.'s father regularly used the drug together when they were supposed to be caring for A.C. And, critically, as the children's counsel emphasized, although mother had made progress, she had yet to demonstrate she could maintain sobriety at home, where she would lack the support of the inpatient program and where she would have ready access to methamphetamine from her neighbor. In view of mother's repeated inability to acknowledge the significance of her drug abuse, and the foreseeable complications that attended her return home, the juvenile court reasonably found a risk of harm persisted, notwithstanding mother's recent progress. (See *In re J.C.* (2014) 233 Cal.App.4th 1, 6–7 [removal supported where, notwithstanding the father's plan to live with his parents and his seven months of sobriety, evidence showed he had "years-long struggles with drug abuse" and he was at "risk of relapsing"]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform."]; see also *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 ["denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future"].)

13

Finally, the juvenile court reasonably determined alternatives to removal would not have adequately protected the children. Unlike *Ashly F.*, upon which mother principally relies, simply removing mother from the family home was not an option, because no other parent was in the home to care for the children. (Cf. *Ashly F., supra,* 225 Cal.App.4th at p. 810; § 361, subd. (c)(1)(A) [juvenile court must consider the "option of removing an offending parent . . . from the home"].) Given those circumstances, the Department and juvenile court reasonably intervened to protect the older children while maintaining them in the custody of their respective fathers, in whose care they were thriving. As for A.C., the court determined his father's methamphetamine abuse posed a danger to the four-year-old's health and safety, and A.C.'s father has not challenged this removal order on appeal. (Cf. *Ashly F.,* at p. 810 [children could have remained in family home under an order removing mother, as father had completed a parenting class].)

The record shows mother had a significant history of methamphetamine abuse that emotionally harmed her children and posed a persistent threat to their well-being. Although mother had started to address her addiction, the juvenile court reasonably determined her deceptiveness and evident unwillingness to fully acknowledge her substance abuse created an ongoing risk that could not be adequately addressed without removing the children from her physical custody. The evidence supports the disposition order.

## 2. *The Juvenile Court Reasonably Exercised Its Discretion to Impose a Monitored Visitation Restriction*

Mother contends there was insufficient evidence to support the monitored visitation restriction. We review a juvenile court's visitation order for abuse of discretion. (*In re Tanis H.* (1997) 59 Cal.App.4th 1218, 1227–1228.) In making visitation orders, the court is guided by the principle that "[v]isitation shall be as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A); *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1138.) Of equal importance, however, is the statutory directive that "[n]o visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).) The juvenile court must balance the "interests of the parent in visitation with the best interests of the child" and "impose any other conditions or requirements to further define the right to visitation in light of the particular circumstances of the case before it." (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757.)

Mother has not shown the monitored visitation restriction was an abuse of discretion. She contends the children were "never abused or neglected while in her care." But the evidence showed that the older girls had suffered emotional harm and that mother neglected A.C.'s supervision while using methamphetamine with the four-year-old's father. Indeed, much of the trauma in the home resulted from mother's destructive relationship with A.C.'s father. Yet mother failed to enforce the restraining order against him and she told her children to lie about his presence in the home. Based on this evidence, the juvenile court reasonably concluded monitored visitation was necessary to ensure the children's safety upon mother's return

15

home from her inpatient drug treatment program.  We find no abuse of discretion.

## DISPOSITION

The orders are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



EDMON, P. J.



DHANIDINA, J.